# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>**c/o Department of Justice**<br>**Criminal Division**<br>**Asset Forfeiture and Money**<br>**Laundering Section**<br>**1400 New York Avenue, N.W., 10th Floor**<br>**Washington, D.C. 20530**<br><br>    **Plaintiff,**<br><br>    **v.**<br><br>**ALL FUNDS UP TO AND INCLUDING**<br>**$1,474,517 IN INTERBANK**<br>**ACCOUNTS HELD BY OR FOR THE**<br>**BENEFIT OF NEDBANK, LTD. AT**<br>**BANK OF AMERICA NA, HSBC BANK**<br>**USA NA, STANDARD CHARTERED**<br>**BANK, THE BANK OF NEW YORK**<br>**MELLON, AND WELLS FARGO BANK**<br>**IN THE UNITED STATES AND NOT**<br>**TO EXCEED THE VALUE OF THE**<br>**CURRENT BALANCE OF ACCOUNTS**<br>**HELD BY OR FOR THE BENEFIT OF**<br>**MAHAMOUD ADAM BECHIR AT**<br>**NEDBANK, LTD. IN SOUTH AFRICA,**<br>**INCLUDING, BUT NOT LIMITED TO,**<br>**ACCOUNT NUMBER XXXXXX2794,**<br>**AND ALL ASSETS AT NEDBANK,**<br>**LTD. TRACEABLE THERETO,**<br><br>    **Defendant *In Rem*.** | **UNDER SEAL**<br><br>**Civil Case No. _____** |

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

 ***COMES NOW***, Plaintiff United States of America, by and through its undersigned

attorneys, to allege, upon information and belief, as follows:

## I.    INTRODUCTION

1.   This is a civil action *in rem* to forfeit $1,474,517 in U.S. currency that is traceable to criminal money laundering of bribe payments made by a Canadian energy company in this District to Chad's ambassador and his wife in order to influence the award of lucrative rights for oil development in Chad.  The Defendant property consists of funds on deposit at U.S. interbank accounts of Nedbank, Ltd. and is subject to forfeiture, as authorized by 18 U.S.C. §§ 981(a) and 981(k).  Section 981(a)(1)(A) authorizes the forfeiture of property "involved in" violations of federal money laundering statutes, or any property traceable to such property.  Section 981(k) provides that if forfeitable funds are deposited into a foreign financial institution that holds a U.S. interbank account at a covered financial institution, the funds are deemed to have been deposited into the U.S. interbank account.

2.   As alleged herein, Mahamoud Adam Bechir ("Bechir") was Chad's ambassador to the United States and Canada from approximately 2004 to 2012.  In 2009, the founders of Griffiths Energy International Inc. ("Griffiths Energy"), a Canadian company, agreed to pay Bechir and his associates $2 million in U.S. currency and valuable company shares in exchange for Bechir exercising his influence over the award to the company of certain oil development rights in Chad.  In 2011, after securing a production sharing contract for oil blocks in Chad, Griffiths Energy transferred the $2 million bribe payment to an account located in Washington, D.C. held by a shell company created by Bechir's wife, Nouracham Bechir Niam ("Niam").  The bribe payment was commingled with other funds and laundered through financial transactions involving several bank accounts in the United States, and through the purchase, improvement, and sale of real property located in the United States.  Eventually, $1,474,517 of the commingled and laundered funds was wired to account number XXXXXX2794 held by Bechir at Nedbank,

Ltd. in South Africa.  Nedbank, Ltd. holds five interbank accounts located in the United States.

Accordingly, the Defendant property, more fully described below, is subject to forfeiture as

property involved in U.S. money laundering offenses, or property traceable to such property.

## II.     DEFENDANT *IN REM*

3.  The Defendant property is more fully described as:

All funds up to and including $1,474,517 in interbank accounts held by or for the
benefit of Nedbank, Ltd. at Bank of America NA, HSBC Bank USA NA,
Standard Chartered Bank, The Bank of New York Mellon, and Wells Fargo Bank
in the United States and not to exceed the value of the current balance of accounts
held by or for the benefit of Mahamoud Adam Bechir at Nedbank, Ltd. in South
Africa, including, but not limited to, account number XXXXXX2794, and all
assets at Nedbank, Ltd. traceable thereto.

## III.    JURISDICTION AND VENUE

4.  This Court has jurisdiction over this subject matter.  *See* 28 U.S.C. §§ 1345 and

1355(a) and 18 U.S.C. §§ 981(a)(1)(A) and 981(k).

5.  This Court has *in rem* jurisdiction over the named Defendant property.  *See* 28 U.S.C.

§§ 1345 and 1355(a).

6.  Venue for this action is proper in this District because acts or omissions giving rise to

the forfeiture occurred in the District of Columbia.  *See* 28 U.S.C. § 1355(b)(1).

## IV.    FACTUAL ALLEGATIONS

7.  In or about 2004, Bechir was appointed the Republic of Chad's ambassador to the

United States and Canada, among other countries.  The Embassy of Chad for the United States

and Canada is located in Washington, D.C., and during his tenure as ambassador, Bechir and his

family resided in the D.C. metropolitan area.

8.  In 2008, Canadian financier Brad Griffiths ("Griffiths") and his business partner

Naeem Tyab ("Tyab") contacted Bechir and the Embassy of Chad in Washington, D.C. to

express their interest in acquiring the development rights to certain oil blocks in Chad.

9.   In or about 2009, upon information and belief, Griffiths and Tyab paid a personal visit to Bechir's residence in the D.C. metropolitan area, offering Bechir $2 million in U.S. currency and an opportunity to buy shares in their new Canadian energy company, Griffiths Energy, in exchange for his unlawful assistance in securing the development rights to oil blocks in Chad.

### A.   Foreign Bribery Offense

#### 1.  First and Second Agreements

10. On or about August 30, 2009, Bechir signed an agreement under which his company, Ambassade du Tchad, LLC, would purportedly provide consulting services to Griffiths Energy (the "First Agreement").  Specifically, the First Agreement indicated that Griffiths Energy would pay Ambassade du Tchad, LLC a $2 million consulting fee, if Griffiths Energy secured the development rights to the Doseo and Borogop oil blocks in Chad.

11. Ambassade du Tchad, LLC was a company established by Bechir in Maryland in or about 2007.  Bechir opened accounts in the name of Ambassade du Tchad, LLC and used these accounts to pay for his personal expenses, as well as embassy-related bills.

12. About a month after entering into the agreement, on or about September 2, 2009, Griffiths Energy terminated the First Agreement after Griffiths Energy's legal counsel advised Tyab that it was unlawful for Griffiths Energy to directly or indirectly offer or provide an advantage to Bechir, a foreign government official.

13. About a week after Griffiths Energy terminated the First Agreement, Bechir's wife, Niam, established a new company, Chad Oil Consultants, LLC, also known as Chad Oil Consulting LLC.  The company was registered on or about September 10, 2009, in Nevada, with Niam listed as its managing member.  It was later registered in Maryland on or about March 1, 2011.

4

14. On or about September 15, 2009, Niam, on behalf of Chad Oil Consultants, LLC, signed a consulting agreement with Griffiths Energy (the "Second Agreement").  Except for the substitution of Chad Oil Consultants, LLC for Ambassade du Tchad, LLC, the Second Agreement was identical to the First Agreement that had been terminated approximately two weeks earlier.

15. Upon information and belief, Niam created Chad Oil Consultants, LLC for the purpose of executing the agreement and obtaining the $2 million payment from Griffiths Energy.

16. In addition to entering into the Second Agreement, on or about October 1, 2009, Griffiths Energy also granted a total of four million founders' shares to Niam and two associates, referred to here as "Associate A" and "Associate B."  Associate A was the wife of a Chad government official (hereinafter "Chad Official A").  Associate B was an acquaintance of Bechir and Niam, who resided in Chad.  As a result, Niam, Associate A, and Associate B collectively held 10 percent of the common shares at the time of Griffiths Energy's formal incorporation.

## 2.  Third Agreement and Bribe Payment

17. From about late 2009 through 2010, executives from Griffiths Energy and officials from the Government of Chad were engaged in negotiations over the development rights to the Doseo and Borogop oil blocks in Chad.  During this period, the Second Agreement expired and the $2 million fee was not paid.  In an e-mail that indicated that he was acting at Bechir's direction, Chad Official A encouraged Griffiths Energy executives to renew the company's agreement with Chad Oil Consultants, LLC in order to facilitate the conclusion of negotiations over the oil rights.

18. In or about January 2011, executives from Griffiths Energy provided the company's counsel, Macleod Dixon LLP, a copy of the terminated First Agreement with Ambassade du Tchad, LLC, and instructed the company's counsel to use the agreement as a model to draft a

5

new consulting agreement with Chad Oil Consultants, LLC.  That same month, Niam, on behalf of Chad Oil Consultants, LLC, signed a revised consulting agreement that again promised payment of a $2 million consulting fee, if Griffiths Energy succeeded in securing development rights to the Doseo and Borogop oil blocks in Chad (the "Third Agreement").

19. On or about January 19, 2011, Griffiths Energy (Chad) Ltd., a subsidiary of Griffiths Energy, and the Ministry of Petroleum and Energy of Chad entered into a production sharing agreement for the exploration and development of the Doseo and Borogop oil blocks in Chad.

20. A month later, on or about February 10, 2011, Macleod Dixon LLP followed wire instructions provided by Chad Official A and transferred $2 million in U.S. currency ("Griffiths Payment") to account no. XXXXXXXXX1398 held in the name of Chad Oil Consultants, LLC at BB&T Bank in Washington, D.C. ("Chad Oil Account No. 1398").

21. On or about January 22, 2013, Griffiths Energy admitted in Canadian court that it had unlawfully agreed to provide a benefit to Bechir, and paid Bechir $2 million in U.S. currency and company shares in order to induce him, a foreign government official, to exercise his influence over the award of oil development rights in Chad to Griffiths Energy.

22. Griffiths Energy subsequently changed its name to Caracal Energy Inc.

**B.      Laundering of Bribery Proceeds Through U.S. Accounts and Real Estate**

23. As set forth below, Bechir and Niam laundered the $2 million Griffiths Payment through U.S. corporate and personal accounts, including several accounts at Mainstreet Bank in Virginia, and used a substantial portion of these funds to purchase and improve real property, which they later sold for approximately $1.9 million.  This sum was transferred into an account at Mainstreet Bank, and then, in or about January 2013, was moved to Bechir's personal account in South Africa.

### 1. Receipt of $2 Million at BB&T Bank and Transfers to Mainstreet Bank

24. On or about February 14, 2011, Niam confirmed, in writing, the receipt of $2 million in U.S. currency from Griffiths Energy.  Chad Oil Account No. 1398 had a negligible balance before Griffiths Energy transferred $2 million into the account, and within about a month of this transfer, the account was closed after Niam removed all of those funds.

25. Approximately $1.75 million of the $2 million Griffiths Payment was transferred from Chad Oil Account No. 1398 to corporate accounts controlled by Bechir and Niam at Mainstreet Bank in Virginia.  Specifically, on or about February 17, 2011, Niam transferred $250,000 from Chad Oil Account No. 1398 to account no. XXXXXX9962 held in the name of Nourmac LLC at Mainstreet Bank ("Nourmac Account No. 9962").  The next day, on or about February 18, 2011, Niam withdrew an official check from Chad Oil Account No. 1398 for $1,502,045, which she then deposited into account no. XXXXXX1592 held in the name of Chad Oil Consultants, LLC at Mainstreet Bank ("Chad Oil Account No. 1592") on or about February 23, 2011.

26. Both Nourmac LLC and Chad Oil Consultants, LLC are companies owned by Niam and registered in Maryland.  Although Nourmac LLC's Maryland registration only lists Niam as a managing member, bank records show that Bechir also controlled and directed the use of the funds held in Mainstreet Bank accounts in the name of Nourmac LLC.

27. Upon information and belief, these transfers to accounts held by corporate entities were designed to conceal the nature, location, source, ownership, and control of the bribery proceeds.

### 2. Commingling of Funds in Mainstreet Bank Accounts

28. Once $1,502,045 was deposited into Chad Oil Account No. 1592 and $250,000 was deposited into Nourmac Account No. 9962 at Mainstreet Bank, these monies traceable to the

Griffiths Payment were commingled with other funds.  Funds in these accounts were further transferred back and forth between accounts in the name of corporate entities formed and controlled by Niam and/or Bechir, as well as between these accounts and Bechir's personal accounts at Mainstreet Bank.  As set forth below, funds traceable to the Griffiths Payment were held in at least four accounts at Mainstreet Bank: (1) Nourmac Account No. 9962; (2) Chad Oil Account No. 1592; (3) account no. XXXXXX5311 held by Bechir ("Bechir Account No. 5311"); and (4) account no. XXXXXX5303 also held by Bechir ("Bechir Account No. 5303").

### a.  Transfers between Nourmac and Chad Oil accounts

29. Specifically, after Chad Oil Account No. 1592 and Nourmac Account No. 9962 received funds traceable to the Griffiths Payment, a total of $435,000 was transferred from Chad Oil Account No. 1592 to Nourmac Account No. 9962 in six transactions between about May 4, 2011, and July 16, 2012.  In addition, between about April 20, 2012, and May 17, 2012, a total of $148,000 was transferred in the other direction, from Nourmac Account No. 9962 to Chad Oil Account No. 1592, in two transactions.  These eight transactions at Mainstreet Bank are detailed in the chart below:

| Date | Amount | Transaction Description |
|------|--------|-------------------------|
| 5/4/2011 | $290,000 | Transfer from Chad Oil Account No. 1592 to Nourmac Account No. 9962 |
| 6/7/2011 | $100,000 | Transfer from Chad Oil Account No. 1592 to Nourmac Account No. 9962 |
| 1/17/2012 | $10,000 | Transfer from Chad Oil Account No. 1592 to Nourmac Account No. 9962 |
| 2/2/2012 | $25,000 | Transfer from Chad Oil Account No. 1592 to Nourmac Account No. 9962 |
| 2/2/2012 | $5,000 | Transfer from Chad Oil Account No. 1592 to Nourmac Account No. 9962 |

8

| 4/20/2012 | $78,000 | Transfer from Nourmac Account No. 9962 to Chad Oil Account No. 1592 |
| 5/17/2012 | $70,000 | Transfer from Nourmac Account No. 9962 to Chad Oil Account No. 1592 |
| 7/16/2012 | $5,000 | Transfer from Chad Oil Account No. 1592 to Nourmac Account No. 9962 |

30. Upon information and belief, these financial transactions were designed to conceal the nature, location, source, ownership, and control of the bribery proceeds.

### b.   Transfers between Chad Oil account and Bechir's accounts

31. Funds traceable to the Griffiths Payment were also transferred back and forth to other accounts, including Bechir's personal accounts at Mainstreet Bank, Bechir Account No. 5311 and Bechir Account No. 5303.  Funds from Chad Oil Account No. 1592 were commingled with funds in Bechir Account No. 5311, and then funds from Bechir Account No. 5311 were later transferred to Bechir Account No. 5303.

32. Specifically, on or about March 14, 2011, $30,000 was transferred from Chad Oil Account No. 1592 to Bechir Account No. 5311.  Then, between about March 14, 2011, and January 23, 2012, $31,400 was further transferred from the Bechir Account No. 5311 to the Bechir Account No. 5303 in five transactions.  These six transactions at Mainstreet Bank are detailed in the following chart:

| Date | Amount | Transaction Description |
| --- | --- | --- |
| 3/14/2011 | $30,000 | Transfer from Chad Oil Account No. 1592 to Bechir Account No. 5311 |
| 3/14/2011 | $10,000 | Transfer from Bechir Account No. 5311 to Bechir Account No. 5303 |
| 3/17/2011 | $10,000 | Transfer from Bechir Account No. 5311 to Bechir Account No. 5303 |

| | | |
|---|---|---|
| 3/18/2011 | $7,400 | Transfer from Bechir Account No. 5311 to Bechir Account No. 5303 |
| 5/20/2011 | $1,500 | Transfer from Bechir Account No. 5311 to Bechir Account No. 5303 |
| 1/23/2012 | $2,500 | Transfer from Bechir Account No. 5311 to Bechir Account No. 5303 |

33. Upon information and belief, these financial transactions were designed to conceal the nature, location, source, ownership, and control of the bribery proceeds.

### c.   *Transfers between Nourmac account and Bechir's accounts*

34. In addition, funds from Nourmac Account No. 9962, which received proceeds of the Griffiths Payment, were also transferred to the same personal accounts held by Bechir.  Between about April 25, 2011, and May 20, 2011, $150,000 was transferred from Nourmac Account No. 9962 to Bechir Account No. 5303 in two transactions.  On or about June 26, 2013, $10,000 was transferred in the other direction, from Bechir Account No. 5303 to Nourmac Account No. 9962. These three transactions at Mainstreet Bank are detailed in the following chart:

| Date | Amount | Transaction Description |
|---|---|---|
| 4/25/2011 | $120,000 | Transfer from Nourmac Account No. 9962 to Bechir Account No. 5303 |
| 5/20/2011 | $30,000 | Transfer from Nourmac Account No. 9962 to Bechir Account No. 5303 |
| 6/26/2013 | $10,000 | Transfer from Bechir Account No. 5303 to Nourmac Account No. 9962 |

35. Upon information and belief, these financial transactions were designed to conceal the nature, location, source, ownership, and control of the bribery proceeds.

### 3.   Purchase, Improvement, and Sale of Sherwood Forest Properties

36. Once the bribery proceeds were commingled with other funds at Mainstreet Bank, Bechir and Niam further laundered the Griffiths Payment by using the commingled funds to purchase and improve real properties, which they later sold.

37. On or about March 14, 2011, Bechir and Niam used approximately $147,875.04 from the Chad Oil Account No. 1592 to purchase real property located at 13221 Sherwood Forest Drive, Silver Spring, Maryland (the "13221 Sherwood Forest Property").  As set forth in paragraph 25, Chad Oil Account No. 1592 contained funds traceable to the Griffiths Payment.

38. The 13221 Sherwood Forest Property sits adjacent to real property located at 13225 Sherwood Forest Drive, Silver Spring, Maryland (the "13225 Sherwood Forest Property"), which Bechir and Niam had previously purchased.  Although both the 13221 Sherwood Forest Property and the 13225 Sherwood Forest Property (collectively, the "Sherwood Forest Properties") were titled to Nourmac, LLC, upon information and belief, both Bechir and Niam lived in these properties.

39. After acquiring the 13221 Sherwood Forest Property, Bechir and Niam used approximately $494,000 in funds from Nourmac Account No. 9962 to make mortgage payments on the 13225 Sherwood Forest Property and to renovate and landscape the Sherwood Forest Properties.  As set forth in paragraph 25, Nourmac Account No. 9962 contained funds traceable to the Griffiths Payment.

40. Upon information and belief, by using these funds to purchase and improve the Sherwood Forest Properties, and by titling these properties to corporate entities, Bechir and Niam concealed the nature, location, source, ownership, and control of the bribery proceeds.

41. In or about January 31, 2013, Bechir and Niam sold the Sherwood Forest Properties. Although property records indicate that the properties were transferred for consideration of "No

Dollars 00/100 ($.00)," approximately $1,926,595 was deposited into the Nourmac Account No. 9962 via a wire transfer on or about January 18, 2013, in which the buyer indicated that the purpose of the funds was for the purchase of a residence.

42. By misrepresenting the sale of the Sherwood Forest Properties on property records, upon information and belief, Bechir and Niam further concealed the nature, location, source, ownership, and control of the bribery proceeds.

43. Bechir and Niam also used funds traceable to the Griffiths Payment to satisfy a loan on real property located at 6551 McKenna Way, Alexandria, Virginia (the "McKenna Way Property").  On or about April 2, 2012, they paid off approximately $242,311.62 of the loan using funds from Nourmac Account No. 9962, which contained funds traceable to the Griffiths Payment.

### 4.  Griffiths Energy's Conviction and Funds Transfers to Bechir's South African Account

44. On or about January 22, 2013, Griffiths Energy pleaded guilty in Canadian court to violating section 3(1)(b) of the Canadian Corruption of Foreign Public Officials Act.  The Canadian court imposed a fine of 10.35 million in Canadian dollars on Griffiths Energy.

45. By then, Bechir had left his post as Chad's ambassador to the United States and Canada.  Bechir was subsequently appointed Chad's ambassador to South Africa, a post he currently holds.

46. About a week after Griffiths Energy was sentenced, on or about January 29, 2013, about $1,474,517 in U.S. currency was transferred from Nourmac Account No. 9962 to account no. XXXXXX2794 held in the name of Mahamoud Adam Bechir at Nedbank, Ltd. in South Africa ("Bechir Account No. 2794").  The wire transfer request indicated that the purpose of the wire was "loan payoff."  A few months earlier, on or about November 13, 2012, Bechir had paid

the balance of the mortgage on the 13225 Sherwood Forest Property for the exact same amount, $1,474,517.

## V.    BASIS FOR FORFEITURE

### A.    Section 981(k) and Nedbank's Interbank Accounts in the United States

47. Pursuant to 18 U.S.C. § 981(a)(1)(A), "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of [18 U.S.C. §§ 1956 and 1957], or any property traceable to such property" is subject to forfeiture to the United States.

48. Pursuant to 18 U.S.C. § 981(k)(1)(A), if funds subject to forfeiture are deposited into an account at a foreign bank, and that foreign bank has an interbank account in the United States with a covered financial institution (as defined in 31 U.S.C. § 5318(j)(1)), the funds subject to forfeiture are deemed to have been deposited into that foreign bank's interbank account in the United States, and "any restraining order, seizure warrant, or arrest warrant *in rem* regarding the funds may be served on the covered financial institution, and funds in the interbank account, up to the value of the funds deposited into the account at the foreign financial institution . . . may be restrained, seized, or arrested."

49. In addition, if a forfeiture action is brought under 18 U.S.C. § 981(k) against such funds held in a U.S. interbank account, "it shall not be necessary for the Government to establish that the funds are directly traceable to the funds that were deposited into the foreign financial institution."  18 U.S.C. § 981(k)(2).

50. For purposes of 18 U.S.C. § 981(k), Nedbank, Ltd. is a foreign financial institution, as defined by 18 U.S.C. § 984(c)(2)(A).  It has five U.S. interbank accounts, as defined by 18 U.S.C. § 984(c)(2)(B).  These interbank accounts are located at Bank of America NA, HSBC Bank USA NA, Standard Chartered Bank, The Bank of New York Mellon, and Wells Fargo

Bank, which are covered financial institutions as defined by 31 U.S.C. §§ 5318(j)(1) and 5312(a)(2).

### B. Predicate Offenses for Money Laundering

51. For purposes of 18 U.S.C. §§ 1956 and 1957, "specified unlawful activity" is defined in 18 U.S.C. §§ 1956(c)(7)(B)(iv) and 1956(c)(7)(D) to include, among other things, (i) with respect to a financial transaction occurring, in part, in the United States, a foreign offense involving bribery of a public official, and (ii) a felony violation of the Foreign Corrupt Practices Act.

52. Bribery of a public official is a criminal offense under Chadian law, including but not limited to legal provisions set forth in article 14, Chapter 3, Title II of Chad Act No. 004/PR/2000 (prohibiting government officials from soliciting or receiving bribes in exchange for exercising their influence). This article of Chadian law, translated into English, is provided in Attachment A.

53. In addition, bribing a public official is a criminal offense under Canadian law, including but not limited to legal provisions set forth in section 3(1)(b) of the Canadian Corruption of Foreign Public Officials Act (prohibiting bribery of a public official). This section of Canadian law is provided in Attachment B.

54. The Foreign Corrupt Practices Act imposes a criminal penalty on any person who:

> while in the territory of the United States, corruptly [makes] use of the mails or any means or instrumentality of interstate commerce or to do any other act in furtherance of an offer, payment, promise to pay, or authorization of the payment of any money, or offer, gift, promise to give, or authorization of the giving of anything of value to—
>
> (1) any foreign official for purposes of—
>
> (A) (i) influencing any act or decision of such foreign official in his official capacity,

14

(ii) inducing such foreign official to do or omit to do any act in
violation of the lawful duty of such official, or
(iii) securing any improper advantage; or

(B) inducing such foreign official to use his influence with a foreign
government or instrumentality thereof to affect or influence any act or
decision of such government or instrumentality,

in order to assist such person in obtaining or retaining business for or with, or
directing business to, any person[.]

15 U.S.C. § 78dd-3.

## FIRST CLAIM

### (18 U.S.C. § 981(a)(1)(A) for violations of 18 U.S.C. § 1957)

55. The factual allegations in paragraphs 1-54 are re-alleged and incorporated by
reference herein.

56. Title 18, United States Code, Section 1957 imposes a criminal penalty on any person
who "[k]nowingly engages or attempts to engage in a monetary transaction in criminally derived
property that is of a value greater than $10,000 and is derived from specified unlawful activity."
18 U.S.C. § 1957(a).

57. As set forth above, the Defendant property was involved in a monetary transaction, or
attempted monetary transaction, affecting interstate or foreign commerce, in property of a value
greater than $10,000, which was criminally derived from specified unlawful activity, that is,
conduct constituting a violation of (i) a foreign offense involving bribery of a public official,
and/or (ii) the Foreign Corrupt Practices Act.  The foreign offenses at issue are as set forth in
paragraphs 52 and 53, above.

58. As further set forth above, such transactions or attempted transactions were conducted
with the knowledge that the property involved was criminally derived.

59. Accordingly, the Defendant property is subject to forfeiture to the United States

15

pursuant to 18 U.S.C. §§ 981(a)(1)(A) and 981(k) on the grounds that it constitutes property

involved in transactions or attempted transactions in violation of 18 U.S.C. § 1957, or is

traceable to such property.

## SECOND CLAIM

### (18 U.S.C. § 981(a)(1)(A) for violations of 18 U.S.C. § 1956(a)(1)(B)(i))

60. The factual allegations in paragraphs 1-54 are re-alleged and incorporated by

reference herein.

61. Title 18, United States Code, Section 1956(a)(1) imposes a criminal penalty on any

person who:

> knowing that the property involved in a financial transaction
> represents the proceeds of some form of unlawful activity, conducts or
> attempts to conduct such a financial transaction which in fact involves
> the proceeds of specified unlawful activity—
>
> . . .
>
> (B) knowing that the transaction is designed in whole or in part—
>
>> (i) to conceal or disguise the nature, the location, the source, the
>> ownership, or the control of the proceeds of specified unlawful
>> activity[.]

18 U.S.C. § 1956(a)(1)(B)(i).

62. As set forth above, the Defendant property was involved in financial transactions, or

attempted financial transactions, affecting interstate or foreign commerce, with proceeds of

specified unlawful activity, that is, conduct constituting a violation of (i) a foreign offense

involving bribery of a public official, and/or (ii) the Foreign Corrupt Practices Act.  The foreign

offenses at issue are as set forth in paragraphs 52 and 53, above.

63. As further set forth above, such transactions or attempted transactions were conducted

with the knowledge that the property involved represented the proceeds of some form of

unlawful activity, and knowing that such transactions or attempted transactions were designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of specified unlawful activity.

64. Accordingly, the Defendant property is subject to forfeiture to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(A) and 981(k) on the grounds that it constitutes property involved in transactions or attempted transactions in violation of 18 U.S.C. § 1956(a)(1)(B)(i), or is traceable to such property.

## **THIRD CLAIM**

### **(18 U.S.C. § 981(a)(1)(A) for violations of 18 U.S.C. § 1956(a)(2)(B)(i))**

65. The factual allegations in paragraphs 1-54 are re-alleged and incorporated by reference herein.

66. Title 18, United States Code, Section 1956(a)(2) imposes a criminal penalty on any person who:

> transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States—

> (B) knowing that the monetary instrument or funds involved in the transportation, transmission, or transfer represent the proceeds of some form of unlawful activity and knowing that such transportation, transmission, or transfer is designed in whole or in part—

>> (i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity[.]

18 U.S.C. § 1956(a)(2)(B)(i).

67. As set forth above, the Defendant property was involved in the transportation, transmission, and transfer of funds, or attempted transportation, transmission, and transfer of funds, affecting interstate or foreign commerce, from the United States to a place outside the

United States, with proceeds of specified unlawful activity, that is, conduct constituting a violation of (i) a foreign offense involving bribery of a public official, and/or (ii) the Foreign Corrupt Practices Act.  The foreign offenses at issue are as set forth in paragraphs 52 and 53, above.

68. As further set forth above, such transfers or attempted transfers were conducted with the knowledge that the property involved represented the proceeds of some form of unlawful activity, and knowing that such transfers or attempted transfers were designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of specified unlawful activity.

69. Accordingly, the Defendant property is subject to forfeiture to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(A) and 981(k) on the grounds that it constitutes property involved in transactions or attempted transactions in violation of 18 U.S.C. § 1956(a)(2)(B)(i), or is traceable to such property.

## FOURTH CLAIM

### (18 U.S.C. § 981(a)(1)(A) for violations of 18 U.S.C. § 1956(h))

70. The factual allegations in paragraphs 1-54 are re-alleged and incorporated by reference herein.

71. Title 18, United States Code, Section 1956(h) imposes a criminal penalty on any person who "conspires to commit any offense defined in [18 U.S.C. §§ 1956 or 1957]."  18 U.S.C. § 1956(h).

72. As set forth above, the Defendant property was involved in a conspiracy to conduct, or attempt to conduct, transactions in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i), (a)(2)(B)(i), and/or 1957, affecting interstate or foreign commerce, that involved the proceeds of specified

unlawful activity, that is, conduct constituting a violation of (i) a foreign offense involving bribery of a public official, and/or (ii) the Foreign Corrupt Practices Act.  The foreign offenses at issue are as set forth in paragraphs 52 and 53, above.

73. Accordingly, the Defendant property is subject to forfeiture to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(A) and 981(k) on the grounds that it constitutes property involved in transactions or attempted transactions in violation of 18 U.S.C. § 1956(h), or is traceable to such property.

**WHEREFORE**, Plaintiff, the United States of America, requests that this Honorable Court issue a warrant for the arrest and restraint or seizure of the Defendant property from Nedbank, Ltd.'s U.S. interbank accounts at Bank of America NA, HSBC Bank USA NA, Standard Chartered Bank, The Bank of New York Mellon, and Wells Fargo Bank; that notice of this action be provided to persons known or thought to have an interest in or right against the Defendant property; that the Defendant property be forfeited and condemned to the United States of America; and for such other and further relief as this Court may deem just, necessary and proper.

Respectfully submitted,

JAIKUMAR RAMASWAMY
Chief, ASSET FORFEITURE AND
  MONEY LAUNDERING SECTION

Date:    July 2, 2014              __/s/_____

DANIEL H. CLAMAN
Assistant Deputy Chief
NALINA SOMBUNTHAM
Trial Attorney
ASSET FORFEITURE AND
  MONEY LAUNDERING SECTION
CRIMINAL DIVISION

U.S. DEPARTMENT OF JUSTICE
1400 New York Avenue, N.W., 10th Floor
Washington, D.C. 20530
Telephone:              (202) 514-1263
Fax:                    (202) 514-5522

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## **VERIFICATION**

I, Debra L. LaPrevotte, hereby verify and declare under penalty of perjury that I am a Supervisory Special Agent with the U.S. Federal Bureau of Investigation ("FBI"), that I have read the foregoing Verified Complaint for Forfeiture *in Rem* ("Verified Complaint") and know the contents thereof, and that matters contained in the Verified Complaint are true to my own knowledge, except that those herein stated to be alleged on information and belief and as to those matters I believe to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a Supervisory Special Agent of the FBI.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Executed on this ___ day of July, 2014.


        /s/
        _____
        Debra L. LaPrevotte
        Supervisory Special Agent
        Federal Bureau of Investigation